902 A.2d 352 (2006)
386 N.J. Super. 623
Theresa M. NOTTE and Robert Pantano, Plaintiffs-Appellants,
v.
MERCHANTS MUTUAL INSURANCE COMPANY and William F. Wolfe, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted May 15, 2006.
Decided July 25, 2006.
Zatuchni & Associates, attorneys for appellants (David Zatuchni, Princeton, on the brief).
Sweeny & Sheehan, John M. Monahan, Three Bridges, (Jaeckle, Fleischman & Mugel) of the New York bar, admitted pro hac vice, attorneys for respondent, Merchants Mutual Insurance Company (Guy Mercogliano and Mr. Monahan, on the brief).
Wolf, Block, Schorr and Solis-Cohen, attorneys for respondent, William F. Wolfe (Louis L. Chodoff, Cherry Hill, on the brief).
Before Judges STERN, PARRILLO and GRALL.
The opinion of the court was delivered by
PARRILLO, J.A.D.
On remand from the Supreme Court, Notte v. Merchs. Mut. Ins. Co., 185 N.J. *353 490, 888 A.2d 464 (2006), we have been asked to determine whether granting plaintiff's request for leave to amend his complaint to replead his time-barred claims under the Conscientious Employee Protection Act (CEPA or Act), N.J.S.A. 34:19-1 to -8, as separate common law and statutory wrongful discharge claims, would be futile on application of CEPA's waiver provision, N.J.S.A. 34:19-8. Notte, supra, 185 N.J. at 503, 888 A.2d 464. We now answer in the negative.
The facts may be briefly stated. From October 2000 through March 2001, Theresa Notte was employed by defendant, Merchants Mutual Insurance Company, where she was supervised by defendant, William Wolfe. Over the same period, plaintiff, Robert Pantano (plaintiff), was employed by Merchants as a supervisor. Notte alleged that after she rejected Wolfe's sexual advances, she was subjected to a hostile work environment, sexual discrimination, and retaliation, in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, that led to her constructive discharge from employment on March 28, 2001. Pantano alleged that his employment with Merchants was terminated on March 27, 2001, because he objected to Wolfe's harassment of and retaliation against Notte. Notte's and Pantano's allegations were made in a joint complaint that they filed on January 13, 2003, against Merchants and Wolfe.
Specifically, in three separate counts, Notte alleged that Merchants was liable to her for creating a hostile work environment, quid pro quo sexual discrimination, and retaliation, in violation of N.J.S.A. 10:5-12a and 12d, and, in a fourth count, Notte alleged that Wolfe was liable to her under the LAD as aider and abettor, N.J.S.A. 10:5-12e. None of her claims are at issue in this appeal. Pantano, on the other hand, alleged only that his wrongful discharge was in violation of CEPA. Following responsive pleadings and completion of discovery, defendants moved for partial summary judgment on the basis that plaintiff's CEPA claims were time-barred under CEPA's one-year statute of limitations, N.J.S.A. 34:19-5, a fact Pantano conceded. Pantano then sought leave, pursuant to Rule 4:9-1 and Rule 4:9-3, to replead his time-barred CEPA claims as separate common law discharge and LAD retaliation claims (N.J.S.A. 10:5-12d and N.J.S.A. 10:5-12e), which by that point were themselves time-barred. In all relevant respects, plaintiff's original complaint and his amended complaint are identical. The underlying conduct charged is the same in both pleadings, and the gist of the action remains the same.
The trial court denied plaintiff's request to amend his complaint. We granted plaintiff's motion for leave to appeal and reversed, holding that plaintiff's new claims "relate back" to his original complaint and, hence, are not time-barred, and that neither defendant was prejudiced thereby. Notte, supra, 185 N.J. at 498, 888 A.2d 464. These rulings were affirmed by the Supreme Court. Ibid. In doing so, the Court expressly rejected defendants' theory that since plaintiff's original CEPA complaint was time-barred when filed, it was a nullity, to which plaintiff's new claims could not "relate back". Id. at 499-500, 888 A.2d 464. Finding just the opposite, the Court nevertheless remanded for a determination whether amendment of plaintiff's claims would otherwise not be legally sustainable, and therefore futile, by virtue of CEPA's waiver provision, N.J.S.A. 34:19-8. Id. at 503, 888 A.2d 464. We now address the precise question posed.
The waiver provision of Section 8 of CEPA provides:

*354 Nothing in this act shall be deemed to diminish the rights, privileges, or remedies of any employee under any other federal or State law or regulation or under any collective bargaining agreement or employment contract; except that the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law.
[N.J.S.A. 34:19-8 (emphasis added).]
Defendants contend that plaintiff's election to "institute" his action under CEPA operates as a waiver of his rights and remedies available under any other State and common law, and therefore bars his subsequent common law wrongful discharge and LAD claims. We disagree. We need not decide the preclusive effect of a CEPA claim concluded prior to judgment on the merits because we are satisfied that the statutory bar does not apply where, as here, "the institution of [plaintiff's] action", beyond CEPA's statute of limitations, is not "in accordance with this [A]ct." N.J.S.A. 34:19-8.
We held similarly in another case in which the plaintiff's CEPA action was not instituted "in accordance with th[e] [A]ct." See Crusco v. Oakland Care Ctr., Inc., 305 N.J.Super. 605, 702 A.2d 1363 (App.Div. 1997). There, we concluded that the plaintiff's time-barred CEPA claims did not bar her, under CEPA's waiver provision, from bringing a common law wrongful discharge claim against her former employer. Id. at 612-13, 702 A.2d 1363. We recognized that CEPA is "remedial legislation, designed to expand employee protection, and patently not to be used as a weapon to limit employees in vindicating their rights after suffering retaliation for conduct warranting protection." Id. at 610, 702 A.2d 1363 (citations omitted). In rejecting the view that the "mere mention of a CEPA claim in a complaint precludes any other course of action to vindicate the plaintiff's employment rights, even where the plaintiff is barred from asserting the CEPA claim[,]" ibid., we further reasoned:
Plaintiff was, from the outset, barred by reason of the passage of time, i.e., the one-year statutory limitation in N.J.S.A. 34:19-5, from litigating her rights under CEPA. Because plaintiff lacked the right to make the CEPA claim after the statutory time limit had passed, it was illogical to view her as barred by the effect of asserting it. There is nothing in the whole of CEPA that can be taken to suggest a legislative intendment to extinguish other claims of employment right. Indeed, the introductory language of the waiver provision itself belies any such purpose: "Nothing in this act shall be deemed to diminish the rights, privileges, or remedies of any employee under any federal or State law or regulation or under any collective bargaining agreement or employment contract[.]" N.J.S.A. 34:19-8. The provision goes on to prescribe an exception to this general design by way of merely requiring a plaintiff, effectively, to make an election of available remedies. It is, in sum, quite obvious that an employee who is barred from making a CEPA claim has no remedy under the Act and cannot, therefore, be seen to have any options from which to elect. Thus, when this plaintiff erroneously pled an unavailable CEPA claim, no bar could attach in respect of any other available claims of wrongful discharge. The [CEPA] count, as originally formulated, had no more legal effect than a smudge on the face of the complaint.
[Id. at 612-13, 702 A.2d 1363 (citations omitted) (first alteration in original).]
*355 Within the context of a different factual setting, the Supreme Court has expressly approved our ruling in Crusco. See Ballinger v. Del. River Port Auth., 172 N.J. 586, 602, 800 A.2d 97 (2002) ("We agree ... that Crusco was decided correctly."). In Ballinger, the plaintiff was a former police officer for the Delaware River Port Authority (DRPA) who brought a CEPA and common law retaliatory discharge lawsuit against DRPA and several of its employees. The Court concluded that the bi-state entity, created by interstate compact, and its employees were not subject to the New Jersey CEPA and, therefore, plaintiff's statutory claim was not legally cognizable. Id. at 601, 800 A.2d 97. However, as in Crusco, the plaintiff's ineffective attempt to bring a CEPA claim against the DRPA was held not to constitute a waiver of his common law causes of action. Id. at 602, 800 A.2d 97. In other words, the fact that the plaintiff "`erroneously pled an unavailable CEPA claim [was no bar to] other available claims of wrongful discharge.'" Ibid. (quoting Ballinger v. Del. River Port Auth., 311 N.J.Super. 317, 332, 709 A.2d 1336 (App. Div.1998), aff'd, Ballinger v. Del. River Port Auth., 172 N.J. 586, 800 A.2d 97 (2002)). The Court also answered in the affirmative the question expressly left open in Young, namely "`whether the statutory waiver is applicable if the CEPA claim is withdrawn or otherwise concluded prior to judgment on the merits.'" Id. at 601, 660 A.2d 1153 (quoting Young v. Schering Corp., 141 N.J. 16, 32, 660 A.2d 1153 (1995)). In a word, there is no CEPA waiver where the CEPA claim is not legally cognizable. Ibid.
To be sure, there are differences between Crusco and the present case, but we find none of them to be legally significant. The major distinction is that in Crusco, the CEPA and wrongful discharge claims were raised in the same pleading, whereas here, the LAD and common law claims were asserted in a proposed amended complaint. Unlike this case, the related claims in Crusco were themselves timely. Moreover, in Crusco, the defendants moved to dismiss the untimely CEPA claim, and the plaintiff moved to amend her complaint to withdraw the CEPA count, before joinder of issue. Yet, none of these differences detracts from the fundamental similarity that both CEPA claims were found to be time-barred and, therefore, not instituted in accordance with the Act. Moreover, even though the plaintiff in Crusco was permitted, without seeking her adversary's consent or leave of court, to amend her complaint "as a matter of course at any time before a responsive pleading [was] served," Rule 4:9-1, here we deemed the amendment timely, allowing it to "relate back" to the filing of plaintiff's original complaint. Notte, supra, 185 N.J. at 498, 888 A.2d 464. The Court concurred in that result. Ibid. But more important, the only significance of the timeliness of the non-CEPA claims is with reference to any prejudice accruing to defendants, and we have already concluded, for purposes of the relation back doctrine, that no demonstrable harm has inured to defendants by virtue of the permitted amendment, a determination with which the Court also agreed. Id. at 501, 888 A.2d 464. Absent prejudice to defendants, we see no meaningful distinction between these two cases to compel a conclusion other than that reached in Crusco.
We are cognizant, as was the Court in Young, that CEPA's "waiver provision raises several complex questions as to the extent of its application and its interaction with other sources of law." Young, supra, 141 N.J. at 32, 660 A.2d 1153. Yet, we are satisfied that our construction of the statutory language to allow plaintiffs related claims in this instance comports with the *356 remedial, beneficent social purpose of the legislation, Barratt v. Cushman & Wakefield of New Jersey, Inc., 144 N.J. 120, 127, 675 A.2d 1094 (1996); Abbamont v. Piscataway Tp. Bd. of Educ., 138 N.J. 405, 418, 650 A.2d 958 (1994), and conversely the "narrow application" of its waiver provision. Young, supra, 141 N.J. at 27, 660 A.2d 1153. Indeed, in addition to exempting those CEPA claims not instituted in accordance with the Act, the waiver provision does not bar common law or statutory claims that are distinct from the CEPA claim. In the context of a retaliatory discharge akin to plaintiff's claims here, the Court in Young, held that:
Construing CEPA's waiver clause consistent with the Legislature's inferred intent, and consistent with the expressed remedial purpose of the entire CEPA statute, convinces us that the waiver provision applies only to those causes of action that require a finding of retaliatory conduct that is actionable under CEPA. The waiver exception does not apply to those causes of action that are substantially independent of the CEPA claim.
[Young, supra, 141 N.J. at 29, 660 A.2d 1153.]
In fact, it was with this exception in mind that the Court, in framing the question on remand, asked us to "evaluate whether ... [plaintiff's] amended claims `are substantially independent of [his] CEPA claim[s]'...." Notte, supra, 185 N.J. at 503, 888 A.2d 464 (quoting Young, supra, 141 N.J. at 29, 660 A.2d 1153). Of course, we had already made the determination that the claims were substantially identical for purposes of the relation back doctrine and we reach no different conclusion for present purposes, especially given plaintiff's apparent concession on this score. See Falco v. Cmty. Med. Ctr., 296 N.J.Super. 298, 686 A.2d 1212 (App.Div. 1997), certif. denied, 153 N.J. 405, 709 A.2d 798 (1998). But, as previously noted, our allowance of plaintiff's other claims rests not on this theory of exemption, but rather on our finding that plaintiff's original CEPA claim, like the one in Crusco, was time-barred under the Act and, therefore, does not operate to preclude his later "related" causes of action.
This result, as we stated in Crusco, is dictated "[a]s a matter of logic and fair-minded interpretation...." Crusco, supra, 305 N.J.Super. at 610, 702 A.2d 1363. After all, by operation of N.J.S.A. 34:19-8, CEPA is designed to effectuate an election of remedies, not to leave a plaintiff remediless to vindicate employment rights where his or her CEPA claim is barred. Where the original CEPA claim is either unavailable or not legally cognizable because it was untimely or otherwise not instituted in accordance with the Act, "it [is] illogical to view [the plaintiff] as barred by the effect of asserting it." Id. at 612-13, 702 A.2d 1363. To posit otherwise, as defendants do, would be to completely eliminate "any options from which to elect." Id. at 613, 702 A.2d 1363. Nothing in CEPA suggests, much less compels, such a result.
Accordingly, we reverse the trial court's order denying plaintiff leave to amend his complaint to include wrongful discharge and retaliation claims and remand for further proceedings consistent with this opinion.